IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MELVIN LEON KELLAM,

Plaintiff,

v.

JAMIE BARKER and JERED KUEHN,

Defendants.

OPINION and ORDER

24-cv-454-jdp

---

Plaintiff Melvin Kellam, proceeding without counsel, is incarcerated at Stanley Correctional Institution (SCI). He suffers from flat feet, a condition that causes pain in his feet, knees, and lower back. Kellam alleges that medical staff at SCI refused to provide him with New Balance shoes and custom orthotics and refused to send him to an offsite foot specialist. I granted Kellam leave to proceed on Eighth Amendment claims against Jamie Barker, the health services manager, and Jered Kuehn, a physical therapist.[1] Kellam alleges that defendants deliberately ignored an order from a specialist in 2015 prescribing New Balance shoes and custom orthotics, Kuehn denied Kellam's request without the approval of an advanced care provider, and then falsified records to hide Kellam's reports of pain, and Barker failed to intervene when Kellam's requests were refused.

Defendants move for summary judgment. Dkt. 48. The undisputed evidence shows that Barker addressed Kellam's medical needs within the bounds of her authority and was not aware of any blatantly inappropriate treatment. The undisputed evidence also shows that, despite Kellam's history of treatment and pain, Kellam repeatedly told Kuehn he was no longer in pain,

---

[1] Kellam was also granted leave to proceed against Virginia Trzebiatowski, who has since been dismissed on exhaustion grounds. Dkt. 45.

and only complained that his shoes and orthotics did not resemble the New Balances and orthotics he had received in 2015. There is no evidence that Kuehn falsified or covered up any allegations of pain. Because neither Barker nor Kuehn consciously disregarded Kellam's medical needs, I will grant summary judgment for the defendants.

## UNDISPUTED FACTS

Kellam submitted some materials after summary judgment briefing. Dkt. 64; Dkt. 67. I'll consider the parts of these submissions that are admissible as summary judgment evidence, which means they are submitted as a declaration or affidavit. I will not, however, accept statements made in briefing or in responses to proposed findings of facts, unless they are supported with admissible evidence.

The following facts are undisputed except where noted.

Plaintiff Melvin Kellam is a Wisconsin state prisoner who was housed at SCI during the events of this case. Defendant Jamie Barker was the health services manager at SCI between 2015 and 2025. She was primarily responsible for the administrative duties in the Health Services Unit (HSU) and was a member of the prison's "special needs committee," which handled requests for medical accommodations. Defendant Jered Kuehn is a physical therapist at SCI who designs and implements physical therapy treatment programs.

Kellam has congenital ples planus, or flat feet, which causes knee, foot, and lower back pain. He has received treatment for his condition, including, at times, custom orthotic inserts and medical shoes. In 2015, when Kellam was housed at Waupun Correctional Institution (WCI), an off-site doctor ordered custom orthotics to be fitted to New Balance shoes. WCI staff ordered the New Balance shoes and the orthotic inserts. However, when Kellam

transferred to SCI in 2018, his orders had expired. He held onto the custom orthotics in the transition but did not retain his New Balance shoes. By the time Kellam transferred in 2018, the Department of Corrections had begun contracting with OrthoFeet for medical shoes, and under DOC policy prison-purchased medical shoes were limited to that vendor. Dkt. 51-1 at 10. OrthoFeet did not supply New Balance shoes.

Kellam's interactions with defendants span four years. In 2021, a physician examined Kellam and determined that he needed medical shoes. The physician sent the matter to the HSU manager, defendant Barker. Barker scheduled three visits with an outside provider, the Hanger clinic, who regularly sent a certified orthotist to the prison. The orthotist ordered custom orthotics and OrthoFeet Lava shoes for Kellam. A few months after Kellam received the Lava shoes and orthotics, he met with defendant Kuehn for a physical therapy appointment. Kellam complained that, although the orthotist had taken molds of his feet, Kellam had seen other inmates with similar orthotics. I take Kellam to mean that he believed the orthotics were generic, not the custom ones that the orthotist had ordered. Kuehn later told a nurse that, because Kellam already had shoes and custom orthotics, he did not believe a specialist was necessary.

Kellam was sent to the Hanger clinic several more times to deal with fitting issues. The orthotist eventually ordered Kellam a different size shoe and remade the orthotics. But Kellam remained unsatisfied and continued to complain that he needed New Balance shoes to address his foot pain. Further details of Kellam's interactions with Barker and Kuehn will be discussed in the analysis section.

After this lawsuit was filed, Kellam appears to have gotten an offsite appointment in 2025, where he was seen for knee arthritis. Dkt. 64-1. Those doctors recommended a referral

to a podiatrist to get new orthotic inserts to avoid further deterioration of his knee and noted that it would be a lifelong requirement. Dkt. 62-2.

## ANALYSIS

Kellam contends that both defendants provided him with inadequate treatment for his foot pain and flat feet, in violation of the Eighth Amendment. To succeed on these claims, Kellam must show that (1) he has a serious medical need, and (2) the defendants were aware of that need but disregarded it. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). For the purposes of summary judgment, defendants do not dispute that Kellam's foot issue was a serious medical need. Dkt. 49 at 14. To meet the second prong, Kellam must show that the defendant knew about a serious risk to the inmate's health and consciously disregarded that risk. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Knowledge means that the defendant both knew the facts from which the inference could be drawn that a substantial risk of serious harm exists, and that the defendant actually made that inference. *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996).

I will begin with defendant Barker and turn to defendant Kuehn.

### A. Defendant Barker

Kellam alleges that defendant Barker denied his requests for New Balance shoes and custom orthotics, denied his requests to see an offsite specialist, and failed to intervene when others denied the same. I have identified three interactions with Barker that could fit the allegations in the complaint: (1) in 2021, during the appointments with the Hanger clinic and after Kellam sent Barker the letter explaining his refusal; (2) in 2023 when Kellam's medical shoe order was not renewed after Barker scheduled appointments with Kuehn and an advanced

care provider; and (3) in 2024, when Kellam was denied a third time and wrote a letter addressed to Barker.

**1. Barker's response to the refusal letter and the nurse practitioner's denial**

Kellam claims that Barker ignored the 2015 doctor's orders prescribing New Balance shoes, denied his requests for those shoes, and did not intervene when others denied them. But, in 2021, Barker made numerous attempts to respond to Kellam's complaints. She scheduled five visits to the Hanger clinic until Kellam refused their orthotics. Barker and HSU followed the Hanger specialist's orders and prison policy by ordering Lava shoes and entering a medical restriction, which permitted Kellam to wear the shoes around the prison. Barker had no independent authority to prescribe or order shoes, as she was not an advanced care provider. Dkt 51, ¶¶ 6–9. The simple fact that Barker investigated Kellam's complaints and referred them to medical providers shows that she was not consciously disregarding Kellam's needs. *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005).

Kellam does not have a constitutional right to his preferred treatment, nor does mere disagreement between medical professionals rise to the level of conscious disregard. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Sewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021). Barker did not consciously disregard Kellam's needs by following the order for Lava shoes instead of attempting to intervene to get Kellam New Balances.

Kellam also argues that the prison staff were required to follow his standing order for New Balance shoes, and that the failure to follow that order constitutes conscious disregard. The failure to follow specialist instructions is often a red flag. *See Jones v. Simek*, 193 F.3d 485 (7th Cir. 2999); *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004). Kellam relies on the Seventh Circuit Court of Appeals' decision in *Gil v. Reed,* which found that medical staff consciously

disregarded a serious medical need when they gave the plaintiff an alternative post-operation medication that the off-site surgeon specifically warned against. 381 F.3d at 662–63. The surgeon had explained the potential serious side effects, and the staff administered the alternative anyway. *Id. Gil,* however, does not hold that any departure from orders is a constitutional violation. Unlike in *Gil*, the 2015 specialist in this case did not issue any warnings against using an alternative medical shoe. Kellam's order expired in 2019, and another specialist made a subsequent order recommending Lava shoes, which complied with prison policy. This is not a case where medical staff ignored specialist orders. At most, this was a difference in medical opinion between specialists, and defendant Barker acted in accordance with the second specialist's opinion.

In July 2021, Kellam refused the orthotics, and the orthotist at the Hangar clinic noted that Kellam "refuses everything I do for him. There is nothing else I can do." Dkt. 52-1 at 67. After refusing, Kellam sent a letter explaining why he refused: "I refused to take them because once again they were the wrong one's. . . . the insoles he is making are not like the ones I have now." Dkt. 52-1 at 87. In the letter, Kellam largely complained about the differences between the new orthotics and his 2015 pair, simply stating that they were "wrong." He also wrote that when he had New Balance shoes his "pain in my lower back was not as severe." Dkt. 52-1 at 87. The letter primarily focused on Kellam's disappointment that the orthotics were different than his 2015 orthotics. Nevertheless, Kellam was still scheduled to see several nurses.

Kellam argues that Barker should have intervened a few months later when a nurse practitioner denied his request to see an offsite specialist. Nurse practitioners are advanced care providers who have the authority to prescribe treatment. Here, the nurse practitioner offered Kellam the option to either "obtain plain OTC (not specially molded) orthotics" to use in his

current shoes or to purchase New Balance shoes with his own funds. Dkt. 52-1 at 49, 57. There is no evidence that Kellam pursued these options. Nurses, like Barker, are entitled to defer to the advanced care provider's decision. *Holloway v. Delaware Cnty Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012). Nurses are only required to intervene when it is obvious that a treatment is blatantly inappropriate or will cause harm. *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015). Barker was aware of Kellam's disagreement with the treatment, and Kellam saw several providers after she received the letter; she was not aware that Kellam was receiving blatantly inappropriate treatment. Her job was to investigate issues and ensure that staff members were educated and notified if the issues were not resolved. Dkt 51, ¶ 8. Once she investigated and referred, she could defer to the decision of the advanced care provider.

**2. Barker's responses during the 2023 reevaluation**

Kellam also contends that Barker continued to disregard his needs after he resubmitted his evaluation for medical shoes in 2023. Barker was aware that Kellam reported "extreme pain" that worsened with shoe inserts or heel cups and reported that his 2015 orthotics did not fit either his Lava or state shoes. Dkt. 52-1 at 46. Barker did not disregard that complaint: she agreed that Kellam should be sent to a physical therapist, Kuehn, and had a nurse place a referral.

Kuehn reported that Kellam repeatedly said that "my feet don't hurt anymore," was no longer in pain, and hadn't been wearing his orthotics for a few years. But Barker did not stop after receiving Kuehn's opinion. She scheduled another appointment with an advanced care provider. That provider determined that Kellam did not meet the prison's requirements for medical shoes and did not place the order. Barker did not have the authority to order the shoes herself or override the determination of the advanced care provider. Dkt 51, ¶¶ 6–9. Again, a

defendant does not consciously disregard a need when she diligently investigates complaints and refers them to medical professions who could address them. *Greeno*, 414 F.3d at 656.

**3. Barker's response to Kellam's 2024 complaint**

Kellam's complaints continued into 2024. Kellam addressed an HSU complaint to Barker explaining that he was not given the medical equipment necessary to remedy his foot pain, and that he needed orthotics and New Balance shoes. A different nurse responded that "as your provider stated, you do not meet criteria for medical shoes. Pain is not [an] indicator for medical shoes. You may purchase your shoe of choice from the catalogue." Dkt. 52-1. Barker was not the nurse who responded to this message. A defendant cannot be held liable for an action she was not personally involved in. *See Stringer v. Rowe*, 616 F.2d 993, 1000–01 (7th Cir. 1980). Because the undisputed evidence shows that defendant Barker did not consciously disregard Kellam's needs, I will grant summary judgment in her favor.

**B. Defendant Kuehn**

As for Kuehn, Kellam contends that (1) in 2021, Kuehn denied Kellam's request to see an offsite specialist without consulting with an advanced care provider; and (2) Kuehn falsified his records to hide Kellam's reports of pain.

**1. Kuehn's denial of specialist care**

At a 2021 appointment, Kellam told Kuehn that he had his feet molded for orthotics but realized that other inmates had orthotics that looked like his. Kellam explained that he needed "special custom orthotics" and new shoes every year, which he had not received. Dkt. 52-1 at 66. Despite Kellam's history of foot pain, Kuehn's physical exam and review of MRI and X-ray reports revealed that Kellam was otherwise in "excellent physical condition." Dkt 52-1 at 66.

Immediately after the appointment with Kuehn, Kellam asked a nurse about getting new insoles. The nurse forwarded the complaint to Kuehn and told Kuehn to refer the issue to nursing if there was a need. Kuehn responded that he did not see a reason for a specialist, because he understood that Kellam already had custom insoles. Dkt. 52-1 at 50–51. Kellam contends Kuehn denied his request without the approval of an advanced care provider. Dkt. 67, ¶ 8.

But the only issue that Kellum had raised with Kuehn was that Kellam believed other inmates had similar orthotics. Kellam provides no evidence that he told Kuehn at the appointment that the shoes were causing him pain or that the shoes did not fit. Kellam already had shoes and orthotics, and he appeared to be in "excellent physical condition." Kellam has no evidence that Kuehn was aware of any substantial risk to his health. Additionally, to prevail on an Eighth Amendment claim, there must be evidence that the defendant's actions caused an injury. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020); *see also Passwater v. Pretorious*, 183 F.4th 531, 538 (7th Cir, 2026). Kuehn did not cause Kellam any injury, as Kellam was seen by the Hanger clinic a month later to address the sizing issue, given a new pair of Lava shoes, and refitted for new orthotics. Dkt. 52-1 at 2, 68–69.

**2. Kuehn's reports that Kellam denied foot pain**

The timing of this second claim is somewhat unclear, but there are two instances where Kuehn is asked for his opinion and he reports that Kellam reported no pain: once in 2021 and another time in 2023.

**a. The 2021 report to the nurse practitioner**

A few months after the 2021 appointment, Kuehn was asked by a nurse practitioner whether Kellam needed to see a foot specialist. Kuehn reiterated that he did not believe Kellam

needed a foot specialist because Kellam already had custom orthotics and shoes, and because the issue was "more about whether or not he can have the shoes he wants." Dkt. 52-1 at 56. After this consult, the nurse practitioner gave Kellam the option to use over-the-counter orthotics or to purchase New Balance shoes himself. Kuehn gave a reasonable assessment based on information available to him. Prison staff do not have a constitutional duty to address concerns that they are not aware of. *Snipes*, 95 F.3d at 590.

**b. The 2023 report to Barker**

In 2023, Barker asked Kuehn whether Kellam needed an offsite specialist, medical shoes, or orthotics. By this time, Kellam had repeatedly told Kuehn that "my feet don't hurt anymore." Dkt. 51-2 at 63. Kuehn had noted that Kellam a presented with no mobility issues or pain. Kellam told Kuehn that he did not wear his old orthotics because they slid around in his new shoes, so Kuehn offered over-the-counter arch supports. Kellam declined that alternative. Kuehn sent his observations to Barker and added that Kellam had previously been unhappy with the custom orthotics made on-site. A few months later, Kellum was suffering foot pain again. But at the time Kuehn reported to Barker, he made a reasonable assessment based on the information available to him. This was the last time Kuehn was involved in Kellam's foot treatment.

In his complaint, Kellam alleged that Kuehn had fabricated his medical records. But at summary judgment, Kellam has adduced no evidence to support the fabrication allegation.

## CONCLUSION

Given the undisputed evidence, no reasonable jury could find that Barker or Kuehn consciously disregarded Kellam's serious medical needs. I will grant summary judgment to

defendants. Defendants contend that they are entitled to summary judgment on qualified immunity grounds. Dkt. 49 at 2–3. Because I am deciding the case on the merits, I need not address qualified immunity.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion to admit evidence, Dkt. 64, is GRANTED.
2. Defendants' motion for summary judgment, Dkt. 48, is GRANTED.
3. Defendants' motion to stay, Dkt. 68, is DENIED as moot.
4. The clerk of court is directed to enter judgment accordingly and close the case.

Entered October 13, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge